NOT DESIGNATED FOR PUBLICATION

No. 118,253

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STEVEN KEITH FULTON,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; WESLEY K. GRIFFIN, judge. Opinion filed April 13, 2018. Affirmed.

*Paul M. Dent*, of Kansas City, for appellant.

*Kayla L. Roehler*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., PIERRON and POWELL, JJ.

POWELL, J.: Steven Keith Fulton appeals the district court's denial of his K.S.A. 2017 Supp. 60-1501 petition, alleging that a retrial following a mistrial due to a hung jury will violate his rights against double jeopardy. Specifically, he argues the district court lacked the manifest necessity to declare a mistrial and that prosecutorial error bars a retrial. We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In April 2016, Fulton was brought to trial on the charge of aggravated indecent liberties with a child in violation of K.S.A. 2012 Supp. 21-5506(b), an off-grid felony, against his stepdaughter. On the second day of trial, following closing arguments, the jury began deliberations around 3:35 p.m. The district court stated the bailiff would check on the jury around 4:15 p.m. At some point after that—it is unclear what time—the presiding juror informed the district court that the jury was ready to go home, and the district court ordered a recess. The jury agreed to begin deliberations the next morning at 9 a.m.

The next day, the district court briefly instructed the jury before sending it back into deliberations but did not state on the record the time that the jury began deliberating. Later that morning, the presiding juror informed the district court that the jury was unable to reach a decision. With counsel and the defendant present, the district court asked, and the presiding juror denied, that a break, such as a longer lunch, would help the jury reach a verdict. The district court stated that although the jury had not deliberated for days, it appeared the jurors had given the case serious consideration; the district court then excused the jurors and declared a mistrial. Neither counsel objected to the mistrial, but Fulton's counsel asked and the district court responded that the jury was deadlocked at a six-six vote.

In January 2017, Fulton moved the district court to discharge his criminal case because the retrial would violate his double jeopardy rights; in April, the district court denied his motion. In June 2017, Fulton filed his present pro se petition for a writ of habeas corpus, alleging that he was being wrongfully confined while awaiting his retrial. Specifically, Fulton asserted that no exception under K.S.A. 2017 Supp. 21-5110(a) applied to him and that a retrial would violate his double jeopardy rights because the district court did not give the jury enough time to deliberate and the prosecutor had

committed error. Fulton complained that the jury deliberated only four hours. After a hearing, the district court denied the petition.

Fulton timely appeals the denial of his habeas corpus petition. Fulton's retrial has been stayed by the district court pending the resolution of this appeal.

WILL A RETRIAL VIOLATE FULTON'S RIGHTS AGAINST DOUBLE JEOPARDY?

Fulton argues the district court erroneously denied his habeas corpus petition, which alleges that a retrial on his charge of aggravated indecent liberties will violate his rights against double jeopardy. Specifically, Fulton argues the district court abused its discretion in declaring a mistrial due to a hung jury and two prosecutorial errors in the first trial bar a retrial.

To state a claim for relief under K.S.A. 2017 Supp. 60-1501, a petition must allege

"shocking and intolerable conduct or continuing mistreatment of a constitutional stature. Summary dismissal is appropriate if, on the face of the petition, it can be established that petitioner is not entitled to relief, or if, from undisputed facts, or from uncontrovertible facts, such as those recited in a court record, it appears, as a matter of law, no cause for granting a writ exists. An appellate court reviews a summary dismissal de novo. [Citations omitted.]" *Johnson v. State*, 289 Kan. 642, 648-49, 215 P.3d 575 (2009).

Our Supreme Court has declared that "a writ of habeas corpus is an appropriate method for challenging a trial court's pretrial denial of a claim of double jeopardy." *In re Habeas Corpus Petition of Hoang*, 245 Kan. 560, 562, 781 P.2d 731 (1989), *cert. denied* 494 U.S. 1070 (1990). Whether a retrial is barred due to double jeopardy is a question of law subject to unlimited review. *State v. Morton*, 283 Kan. 464, 468, 153 P.3d 532 (2007).

A.      *Did the district court abuse its discretion in declaring a mistrial?*

Both the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights protect defendants from multiple prosecutions for the same offense. *State v. Phillips*, 299 Kan. 479, 491-92, 325 P.3d 1095 (2014). "'As a part of this protection against multiple prosecutions, the Double Jeopardy Clause affords a criminal defendant a "valued right to have his trial completed by a particular tribunal."' *Kennedy*, 456 U.S. at 671-72." *State v. Miller*, 293 Kan. 535, 544-45, 264 P.3d 461 (2011). "[A] qualified mistrial exception to the prohibition has been developed to protect the public interest in the punishment of crime. There are differing standards for lifting the double jeopardy bar to a second trial depending on whether or not the proceedings were terminated over the defendant's objection." *State v. Wittsell*, 275 Kan. 442, 446, 66 P.3d 831 (2003).

Generally speaking, when a criminal defendant seeks a mistrial, double jeopardy does not bar a retrial. See *Morton*, 283 Kan. at 470. However, in *Oregon v. Kennedy*, 456 U.S. 667, 689, 102 S. Ct. 2083, 72 L. Ed. 2d 416 (1982) (Stevens, J., concurring), the United States Supreme Court recognized an exception for "egregious prosecutorial misconduct" designed to goad a defendant into sacrificing his or her choice to live with the outcome from the first jury.

The other double jeopardy rule applicable is the manifest necessity rule. "The long-established test applie[s] where the first trial was terminated *over the objection of the defendant* [and provides that] [r]etrial is constitutionally permissible only where a high degree of necessity supports the mistrial." (Emphasis added.) *Wittsell*, 275 Kan. at 446. However, in the typical instance, "'a retrial following a "hung jury" does not violate the Double Jeopardy Clause.' *Richardson v. United States*, 468 U.S. 317, 324[, 104 S. Ct. 3081, 82 L. Ed. 2d 242] (1984)." *Sattazahn v. Pennsylvania*, 537 U.S. 101, 109, 123 S. Ct. 732, 154 L. Ed. 2d 588 (2003). Likewise, our Supreme Court has stated that

4

"[s]ince 1824, . . . 'a failure of the jury to agree on a verdict [is] an instance of "manifest necessity" which permit[s] a trial judge to terminate the first trial and retry the defendant [without violating the Double Jeopardy Clause], because "the ends of public justice would otherwise be defeated."' [Citations omitted.]" *Phillips*, 299 Kan. at 492.

Fulton's principal argument is that the district court erred in declaring a mistrial due to a hung jury and, because of this error, any retrial would be a violation of the Double Jeopardy Clause. Specifically, he argues the district judge did not have the manifest necessity to declare a mistrial because the district court did not (1) adequately determine if there was no reasonable probability that the jury would agree on a verdict and (2) require the jury to deliberate for a satisfactory amount of time.

A district court's decision to declare a mistrial "is a matter entrusted to the trial court's discretion, and the decision will not be set aside on appeal unless abuse of discretion is clearly shown." *State v. Graham*, 277 Kan. 121, 132, 83 P.3d 143 (2004). A district court abuses its discretion when no reasonable person would take the view adopted by the court or the court based its decision on an error of law or fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

On appeal, both parties ask us to address the merits of Fulton's argument— whether the district court's declaration of a mistrial was, in fact, a manifest necessity. But there is a problem. At trial, Fulton did not object to the district court's declaration of a mistrial; therefore, the manifest necessity standard is inapplicable. See *Graham*, 277 Kan. at 133. Accordingly, Fulton's failure to object to the mistrial bars our consideration of whether the mistrial was justified by manifest necessity.

B.      *Does prosecutorial error bar a mistrial?*

Next, Fulton asserts a retrial will violate his rights against double jeopardy based on two prosecutorial errors committed in his first trial. Fulton's argument appears to be an

attempt to claim that prosecutorial error forced him to seek a mistrial. However, at trial, Fulton neither objected to the mistrial, nor did Fulton seek a mistrial based upon any alleged prosecutorial error. Nevertheless, our Supreme Court has decreed that in instances where the defendant merely consents to a mistrial by failing to object, "double jeopardy is not implicated unless the prosecutorial conduct giving rise to the mistrial was intended to 'goad' the defendant to move for a mistrial. Retrial is constitutionally permissible where the governmental conduct was not intended to provoke the defendant into seeking a mistrial." *Wittsell*, 275 Kan. 442, Syl. ¶ 3.

Generally, the error must amount to "something more than misconduct, even intentional and reversible misconduct, in order to bar retrial. It requires that the prosecutor intended to provoke a mistrial, to goad a defendant into sacrificing his or her choice to live with the outcome from the first jury." *Morton*, 283 Kan. at 471. "Where the prosecutor seeks to force the defendant into the choice, the choice is not freely made, and the prosecution has subverted the defendant's rights protected by the Double Jeopardy Clause of the Constitution." *State v. Cady*, 254 Kan. 393, 400, 867 P.2d 270 (1994).

Fulton first claims the prosecutor gave a personal opinion in closing argument. The prosecutor stated at the beginning of closing arguments: "I believe the State has proven the case beyond a reasonable doubt." It is true that "[a] prosecutor may not express a personal opinion on the defendant's guilt . . . . But a prosecutor may comment on the weakness of a defense or make a directional statement encouraging the jury to examine evidence of guilt." *State v. Fisher*, 304 Kan. 242, 252, 373 P.3d 781 (2016). Other than the alleged statement—which occurred at the start of the prosecutor's closing argument—the prosecutor requested that the jury review the evidence, make its own witness credibility determinations, and advised the jury that the counsel's statements were not considered evidence when deciding the case. Accordingly, the prosecutor's one comment during closing is certainly not an egregious prosecutorial error that would bar a

6

retrial, and Fulton makes no showing how such a comment could have provoked him into requesting a mistrial.

Next, Fulton alleges that the prosecutor intentionally provoked the forensic interviewer, Cheryl Smith, into giving improper opinion testimony:

"Q. [by the State:] And you said that she had indicated at the beginning she—she would only have to talk about it once?

"A. [by Smith:] Yes.

"Q. And what, if anything, did that indicate to you, that statement?

"A. That she was nervous and scared and that she did not want to talk about what had happened to her.

"Q. And did that seem odd to you?

"A. No. That's—that actually is pretty common among children—in my experience among children who have been sexually abused because a lot of children never disclose so it is hard to talk about.

"[Defense Counsel]: I object to that conclusion and I object to the narrative form of that response. That's going beyond the question.

"THE COURT: It probably did go beyond the—you're right, it did go beyond the question and it will be struck.

"[Defense Counsel]: I appreciate that, Judge, and I would ask for a continuing objection along the line of what this indicates."

7

Based on the transcript of the proceedings, we find that the State did not intentionally question the witness in order to provoke Fulton into requesting a mistrial. First, the witness' answer went outside the scope of the prosecutor's question, and, upon Fulton's objection, the district court struck the answer from the record. Additionally, outside the presence of the jury, the district court told the State not to question Smith in a manner that may elicit her personal opinion on whether the victim's behavior was consistent with sexual abuse victims. The State explained that the question was designed to provide evidence concerning why the victim did not immediately disclose the alleged abuse. After the district court advised the State not to pursue that line of questioning, the State remained within the parameters outlined by the district court and consistent with its proffer. Thus, we find that the State did not intend to elicit improper opinion testimony by the witness in order to provoke Fulton into requesting a mistrial.

Affirmed.